All righty, our next case, we're back on the record. Our next case is Secretary United States Department of Labor v. Comprehensive Healthcare Management Services LLC, number 24-2842. And we'll hear from Appellants Council. Good morning, Your Honors. May it please the Court, Jeffrey Schwartz on behalf of the Appellants. With the Court's permission, I'll dispense with identifying all 15. Okay. And I would like to reserve two minutes of rebuttal time. That'll be granted. Thank you. We're asking the Court to reverse the District Court's judgment because the trial court erred both as to issues of law and fact. Our papers detail all of the myriad issues of error. I want to spend my time focusing on three, which contain the lion's share of the excessive damage. First, the Court ignored the factual record that employees frequently did not work during an unpaid meal break. And in the instances, in many instances, even when they did work during an uninterrupted work break, they were compensated for that time. The Court failed to carefully scrutinize that evidence, as they were required, as the District Court was required to do. And the result of that failure was a subsequent failure to assess a fair and approximate inference from the record evidence with regard to time spent allegedly working during a work break. Number two, the Court, without dispute, applied the wrong legal standard to the issue of whether a certain category of employees were exempt from the Fair Labor Standards Act. So Mount Clemens doesn't apply to that issue, then? Is that what you're saying? Mount Clemens does not apply to that issue. That's correct. This is separate from Mount Clemens. This is the various categories of employees that we showed in the record had the necessary duties to exempt them from the Fair Labor Standards Act. Are we clear the District Court erred in that respect? Is it clear that the Court did apply Mount Clemens where it shouldn't have? On the first issue with regard to... The second issue. The second issue, we're not saying Mount Clemens applies other than... No, no. But did the District Court err... Are you saying the District Court erred by applying it? Well, it's a dual-part issue because if they're exempt, then Mount Clemens goes away. Okay. The only issue of the application to Mount Clemens is if they're non-exempt, and then it gets into the question of they, like everybody else, what damages are they entitled to? Because if they're exempt, they're not entitled to any damages. Okay. So our position is the Court applied the wrong standard, putting the defendants to a burden that doesn't exist, and therefore the assessment of the facts cannot have been appropriate because the standard was applied wrongly, and the record clearly supports, under preponderance of the evidence standard that the District Court should have applied, that these individuals were all exempt. The third issue that I'm going to spend time on is the question of the applicability of what's called gap time.  So under the Fair Labor Standards Act, there's two things that the statute addresses. One, employees are paid a minimum wage for the hours they work, and two, they're paid time and a half for hours over 40 based on the regular rate that was worked in the hours up to 40. In this instance, the District Court awarded plaintiffs, or the Department of Labor and the plaintiff's stead, hours that were less than 40, and then factored that into the regular rate for an overtime award. It seems to me that there's a circuit split on that gap pay issue, right? There is a circuit split. This circuit has not decided that specifically. I don't believe research did not reveal any cases post-Loper Bright that have ruled on this issue. True, but the Lundy case in the Second Circuit did pass on this. Yes. Contrary to what your client would, I mean, your adversaries, I think, would rely on that case. That's correct. My point is that you have the circuit split. This Court has not specifically stated whether that's compensable or not. But it seems to me that it's strictly a clear issue of law. I mean, there's just no way in the statutory formulation that gap time is compensable. If an employee works during the 40-hour work week, the only thing an employer has to do is pay the minimum wage. There's no allegation in this case that that didn't happen. So paying, giving damages for hours under 40 is simply not contemplated by the statute. Just a straightforward statutory reading. The Department of Labor regulations historically have said that that should be computed into the overtime, but there are state court remedies for that potential misdeed if an employer doesn't pay. Pennsylvania, in particular, this case emanates from Pittsburgh, would have been an avenue for relief for those individuals. There is no such relief under the Fair Labor Standards Act. Now, with regard to the issue of Mount Clemens and the work break, we are dealing, Your Honors, with 15 separate facilities spread out throughout the greater Pittsburgh region. These facilities differ tremendously in size. They differ tremendously in the type of care they give. Some give skilled nursing care. Some give rehab care. They differ in the categories of employees who work at each facility. And therefore, it is just inappropriate to cast a wide net and establish that a pattern of practice exists when you are looking at a factual pattern that is inconsistent from one facility to the other. But didn't they have someone... But when you have 5,000 employees, isn't it necessary to use some representational testimony as opposed to bringing in each one of the 5,000 employees? Absolutely, Judge Roth. I completely agree with that. The question, there's two elements to the answer to that. One is, what is a representative sample? Here, we were dealing with 0.6% of the entire workforce, which we would contend is not a sufficiently representative standard. The other problem with the application of Mount Clemens here is it is inconsistent with the record evidence. There was no pattern in practice established. Even the predicate of this Department of Labor investigation, which was the result of an 20 of those employees signed statements that said they either always or mostly worked through their work break. So there's just no basis to say every employee at every facility should be compensated for time that they allegedly were interrupted from working during a break. And that's what the district court did. It's just completely disjointed from the record. If you had filed the necessary, kept track of the necessary records as time went on, that information would have been in those records as opposed to having to bring it in by employee testimony. Isn't that correct? Not necessarily, Judge. So an employer that has a policy of doing an automatic deduction for a lunch break, that policy is not violative of the Fair Labor Standards Act. And so the application of the policy is legitimate. The question becomes, is the employer not abiding by that policy? And in this case, the record clearly shows that they were. So there were no records that were missing. It would be really the essence of proving a negative. And so in this instance, the only way for the Department of Labor to have made their case was to establish that this was so widespread that it's impossible to do anything other than have some representative status. But the representative status was inadequate. And the evidence in the record showed very clearly that the overwhelming majority of people had their lunch interrupted on a regular basis. And in the instances when they didn't, they were paid for it. Indeed, at many of the facilities, if an employee was unable to have an uninterrupted lunch, they had the opportunity, when they clocked out at the end of the day, to remedy that. And there were numerous employees who testified that that's what they were able to do and that they were paid for it. So this $24 million that was awarded for just missing lunch breaks, $12 million and then liquidated times two, is detached from reality. It would result in people being paid thousands of dollars for work that they didn't work and then doubling that liquidated. Now with regard to... What is our standard of review there? I mean, I get if you're arguing to a jury or, I guess, to a judge, you make that argument. But there are findings of fact here. It's clear error. That's a pretty high hill decline, isn't it? Well, I think we can have the first standard be that the district court erred as a matter of law in applying the standard of Mount Clevens to a pattern of practice. And then we could also contend that the district court erred by failing to carefully scrutinize that record evidence. The evidence is there. The judges have disregarded it for no reason, no explanation either, other than what I would contend was a general sense of acrimony to the defendants. The district court judge clearly felt that the defendants were not treating their people the right way and issued an award that, in our view, wasn't remedial but was punitive. And I think the record shows that because there's just no... You can't give a remedy to somebody who wasn't paid properly. Now, as far as the exemptions are... Hold on. That's okay. I'm sorry. Go ahead. I'm sorry. No, go ahead. So there are a number of different categories of employees. There's the assistant director of nursing. The evidence in the record clearly showed that that person has supervisory authority. And the district court's decision to, again, applying the wrong standard in the first instance, but even factually, Judge Stickman disregarded all of the testimonial evidence about the... It's referred to as an ADON, assistant director of nursing, disregarded all of the testimonial evidence about the ADON's duties and cited to a single declaration from a non-testifying witness who even in that declaration said that her opinions were given weight, which is part of the standard of showing that somebody has managerial responsibilities. You, as a manager, do not have to make the final decision, but if your recommendations are given weight, then you're exempt. So we have the assistant director of nursing, the nursing supervisors, the maintenance directors, the housekeeping directors, and the director of social work who should have been exempt under the professional exemption. And because of the fact that the district court applied the wrong standard, it's impossible to know whether the district court took into account whether the evidence needed the weight it needed from a preponderance of the evidence standard. And then again, on the gap time, it's just simply a question of a failure of the statute to compensate for that. Do we have these DOL interpretations of the statute going back to the enactment of the statute decades? After Lope or Bright, we give that Skidmore deference? Or what kind of respect do we give to those interpretations? Well, under Lope or Bright, you have no obligation to give any deference. And given that there's no obligation to give any deference, the reading should be the statute itself. And the statute does not afford any remedy for unpaid gap time. No Skidmore respect. I'm sorry? No Skidmore respect. I'm using that word advisedly, not deference, but respect. I don't believe so. Yeah. Okay. Anything else before I hand it over to the Department of Labor? You know, maybe you could, on pages 20 and 21 of your brief, you have a chart of different things. This is a beefy record with a lot of numbers. That's why I went to law school, so I didn't have to look at numbers. But your case required that. So where did you pull this data from that's in this particular chart? This is from Joint Exhibit 56, and the information is drawn from that. I think the chart actually was Joint Exhibit 56. How does this support your position? Maybe I don't understand exactly how it does. I know your time's up, but how does this support your position? I wasn't really clear on that. Thank you, Your Honor. I'm not sure it necessarily does. I think this was just illustrative to show how the computations were done and where we contend that they were done improperly. Okay. All right. Okay. Anything else? Do you have anything else, Judge Roth? I have nothing further. Thank you. Okay, great. Thank you. We'll hear you on rebuttal. And now we'll hear from the Department of Labor. Good morning, Your Honors. My name is Dean Romhelt. I'm here on behalf of the appellee plaintiff in this case, Secretary of Labor. With me at counsel's table is Alex Herrera. I'd like to just address Judge Porter's question first about deference. Loper Bright expressly mentioned Skidmore several times and expressly preserved what's long been established as Skidmore deference, which is the extent that an agency has longstanding interpretations, and those are persuasive that they should be given due respect. Loper Bright did not change in any way Skidmore deference. Obviously, Loper Bright was a very significant case that changed deference, other aspects of how deference goes, but not with respect to Skidmore deference. And I would point the court to the Perez v. Owl decision that's cited in our briefs by the 11th Circuit, where the 11th Circuit gave Skidmore deference to a number of our regulations in 29 CFR Part 778, which deal with the regular rate and overtime, and expressly addressed the question that post Loper Bright, Skidmore deference remains a viable option for courts when the agency's interpretation, as it has been here, has been longstanding. Our interpretation dates back to 1941, just a couple of years after the passage of the Fair Labor Standards Act. So there's nothing in Loper Bright that prevents us from working together. But I guess picking up on your friend's argument, in what respect is the statute ambiguous at all? It's not a question of ambiguity, it's a question of what the statute's requirement is. I mean, the 29 U.S.C. 207 requires employers to pay time and a half for hours worked over 40 at the regular rate at which the worker is employed. And isn't it possible to calculate overtime wages without paying gap time? In an overtime workweek, when the worker's worked over 40 hours, it's not possible to pay the worker at one and one-half times the rate that you've already paid the worker if you haven't actually, in the first instance, paid the employee at the regular rate for those first 40 hours. The statute makes clear that it's one and one-half times the regular rate. And the purpose of 29 U.S.C. 207 is to make sure that when employers employ a worker for over 40 hours in a week, that they pay a premium based on the regular rate that they're already paying the employee. Otherwise, there's no sort of financial impact on the employer of working overtime. And that regular rate language is clear, and the regular rate, which is the employee. Again, an employer can't provide one and one-half times something without providing the something first. And that's, in our view, the only possible interpretation of the statute. Otherwise, if overtime gap time is not provided, it could lead to outcomes that would undermine the purpose of the regular rate of the overtime requirement. I'll just give you a quick example. If I hire a worker at $20 an hour and he works 40 hours a week, that's $800. And then the next week the worker works 42 hours, so that would be $60 of overtime. To the extent that I don't have to pay that worker, that employee at the regular rate for the first 40 hours, I can essentially pay them at $20 for the first 37 hours. That would be 740. Sorry about the math. But pay them zero for 38, 39, and 40th hours, then pay them the $60 for overtime. So, again, I have a worker who's worked 42 hours that particular week, but I'm still paying them $800, which is what I paid them for the 40-hour week. And that totally defeats the purpose of the statute, which is to provide a financial pressure on employers when they work with employees over the 40-hour period. I guess I understand why it frustrates the purpose of the statute. The question is, does it frustrate the statute? Congress could fix this with a snap, right? Well, Congress, and I think we identified this in the overnight motor transportation case, Congress specifically chose the regular rate language as the requirement and the base from which overtime is paid. And to the extent that, I mean, there is no fix that's needed because they used that regular rate language. And it's one and one-half times the regular rate as opposed to one and one-half times the minimum wage. And I think, you know, we've had this long-standing position. There is the Fourth Circuit's decision in Conner v. Cleveland County I think really walks through it. The Lundy decision, in addition to being dicta on that particular point, because the Second Circuit already found that there was no overtime claim to begin with, so why address the overtime gap time claim is unclear. It should have not addressed it, as this court did in the Abingdon case. Neither is binding on us. What? Neither is binding on us. Of course not. But we would submit that the Fourth Circuit's case, which really dived into the issue of statutory and the Department's position, is the more persuasive and well-reasoned case. And this court can certainly accord to get more deference to it. Addressing the... Can we talk about the exempt issue? It seems that you concede that the court, I guess, misspoke legally when it discussed this. I guess two issues were narrowly construed against the employer and applied a standard of plainly and unmistakably, or said this rather than preponderance of the evidence. Yet I think you argue it was harmless error. I guess my question to you is, are we really well-situated to assess, in the context of this case, how those legal errors, potential legal errors, affected the district court findings? And didn't the Supreme Court in the EMD case do just the same? As I think your adversary suggests, for a remand to get more clarity on this. The EMD case certainly resolved what the applicable standard was and said it was preponderance of the evidence. With respect to the narrow construction issue, I think the court is in... But it didn't delve into, but we can decide it on this record type thing. It may not have chose to in that case, but I would submit that there is ample evidence here. We have evidence. Yes, of course. On the narrow construction issue, just very briefly, this court didn't engage in any sort of statutory construction to determine whether these exemptions were not. There was just an issue of applying the regulations to the facts of this case. So the extent that the court articulated a statutory construction principle but then doesn't engage in any actual statutory construction, then I think the court is... Well, I mean, isn't the standard to apply rather elemental? I mean, it's preponderance, and yet they said it had to be a plainly and unmistakably issue. Which was consistent with Third Circuit case law at the time, obviously EMD versus Carrera was the intervening case. But with respect to the record, on each of the various positions, first of all, the standard is preponderance of the evidence. So the burden is on the employer to prove that each criteria of the exemption is satisfied. When an employer hasn't done so, as this court held in Davis v. Monier Farms, then the employer fails to meet its burden. And to the extent that the record's even unclear on any particular requirement of the exemption, in those cases, as the court said in the Martin v. Cooper electric case, then the employer will be held to have not satisfied its burden. So again, the burden is on the employer in the case to prove the exemption. The district court made extensive factual findings with respect to each particular position and the duties. And for the various positions that were mentioned, like activities director, maintenance directors, there were specific findings they didn't supervise two or more employees, for example, and didn't have a role in hiring firings, which are required criteria for the executive exemption. And with respect to the nursing supervisors, similar findings of a lack of duties, with respect to the housekeeping position, again, there was not evidence presented that that individual supervised two or more employees. Again, the burden is on them, so to the extent that there was a lack of evidence in the record. But my point is, if the district court employed a higher bar, how can we at this court say, well, it's a lower bar? And based on the record, we're good. I mean, there's no indication throughout the district court's actual application of the standard that it imposed that. It didn't say, for example, oh, there's a lot of evidence here, but it doesn't meet this higher standard. I mean, there was not evidence to begin with to satisfy the preponderance standard. There's no indication from the court's decision that it really held this high bar. It found that three categories, for example, were exempt. There was no sort of barrier to a finding of exempt status here. Some of the categories the district court judge statement found that the positions were exempt, and some of them the court determined they were non-exempt. I'll also just, I think, another reason why the court can decide this issue based on the record is that to be an exempt employee on the FLSA, the employee must be paid a predetermined salary that's not subject to reduction based on hours worked or quality of work on a weekly basis. There was no effort in the employer's opening brief to even address that issue. It was completely just ignored. And the failure of the employer to prove that particular standard, or even make an effort to try to prove that that particular requirement of the exemption was met, would be another basis for this court, on the particulars of this case, to affirm the district court's decision. There was ample testimonies on page 48 of our response brief of how many, many purportedly exempt employees were not paid on that salary basis, as an email from the HR director indicates, and that can cause employees to lose, not satisfy the exemption. But the salary basis was never addressed in their opening brief. And there was just, that's on them. That's their burden to show. What about, could you reply to the argument, respond to the argument of your adversary dealing with, I read your brief to concede that it would be incorrect to apply Mount Clemens' framework to all of the claims here, all of your claims, is that so? That is so. I mean, Mount Clemens comes into play when there is a failure on the employer's part to keep the required records. And the secretary is able to prove, as a just and reasonable inference, the amount of uncompensated time. A lot of the violations here were admitted. A lot of the violations were clear from the face of the records. And there was not the need to rely on Mount Clemens in any respect. The violation, for example, of failing to include bonuses and shift differentials that were paid to employees in their regular rate of pay for those overtime work weeks was clear on the face of the record. With respect to the meal break issue, the court relied, the court, to find that there was a common occurrence. Again, just to be clear, the court did not find, and we never argued that every day in which an employee worked a shift that he or she worked through the meal break and was uncompensated. It was a regular occurrence. There was a pattern of it. It often happened. And that was well supported by the representative employee testimony. But that was only one part of the testimony that the secretary offered. The secretary also provided numerous declarations. There were 600 exhibits, including numerous emails, internal emails among corporate leaders acknowledging this particular mistake and failure to comply. There were similar policies and practices that were shown. So... Well, now your friend says that, hey, there's a real problem here. I believe he said .65 of the 6,000 employees recalled. Now, Judge Roth, I think our jurisprudence... Reich v. Gateway Press, I think, is one case that says we don't have a set percentage. Right. But how do you respond to that argument? That seems kind of light. I would cite you to the case that this court just decided in December of this year, the Secretary v. East Penn case, where the numbers were even a lower percentage. But again, the fixation on the numbers is not the correct way to look at it. As important as representative employee testimony is, it's important to consider all the evidence that the secretary presented with respect to that particular violation. But he points out there's lots of different plants. And, for instance, your Latrobe plant had zero people testify. Right. But there was a regional director of operations who was familiar with that plant and testified to it. And there was evidence that this particular violation was happening across different roles. I mean, obviously, the patient-facing employees, this violation occurred to a lot. But there were... The rehab department experienced this violation. The dining department... You know, there was testimony in various different capacities of workers that the violations occurred in that. And again, as you mentioned earlier, this is a clear error review. And there was no... They have not satisfied the standard that there needs to be a firm and definite conviction that Judge Stickman made a mistake here. And I would just... As the court looked to an East Penn, I would just ask the court to look at the entire scope of evidence that was provided in addition to the representative employees. But once we showed that pattern of practice, the extent of the unpaid meal break work was subject to the Mount Clemens Burden Shifting Standard because they kept no records at all of the extent to which employees worked through meal breaks. And in determining the extent of that unpaid work, we made a number of reasonable assumptions to try to account for some of this other evidence, for example, that occasionally meal breaks were worked through. To the extent that the system worked and an employee was paid for a meal break, we didn't exclude that payment. To the extent that the system worked and there was no automatic deduction, we didn't add time back in. We only disregarded the meal break deduction when it was actually taken in those cases, and we only disregarded it partially based on the testimony that there was some employees who did occasionally were able to get an uninterrupted meal break. And we credit back to the employer five minutes of time to try to account reasonably for that. And that may have been imprecise, but it's as court has recognized in the nursing home care management case. When the employers fail to keep records, our obligation is not to be perfect, but just to provide a sufficiently reasonable approximation of the extent of unworked time or uncompensated time. I see that my time's expired. Judge Roth, do you have any other questions? I have nothing further. OK. Thank you, counsel. Thank you. And we'll hear the rebuttal. Reply. Let me take East Penn first, because it's easily distinguishable from our factual pattern. East Penn involved the issue of donning and doffing and whether employees should be compensated for that time. They clearly weren't being paid for that time, so there was a violation of law that was found. And then it was just a question of how is it determined how much time was being spent? And there was expert testimony done based upon a rather large sample that showed how much time was spent donning and doffing, and it was easily decidable without any sort of significant representative sample, as contrasted with our case, where you have a policy that is completely legal under the Fair Labor Standards Act. There's no contention that it wasn't. The automatic deduction is permissible, and so you would need a representative sample to establish how frequently did that not happen. And that's our concern here is that there has to be a threshold, and .65 is just simply not it. Now, with regard to the salary basis issue, there was no reason for us to raise that in our principal brief. It wasn't brought up in the district court's decision. Indeed, the judge found that certain employees were exempt, and we did present evidence. There's evidence in the record. It's in our findings of fact where Mr. Peshman testified about the fact of how salary employees were paid. So there's record evidence establishing that we met our burden to show that there was a salary basis in the record, and it wasn't necessary for us to brief it. It first came up in the response brief by the secretary. Now, with regard to gap pay, I'm going to propose a hypothetical, and I realize I'm running out of time, so if the court will indulge me. It's a short hypothetical. Very short. Okay. If an employer pays somebody $20 an hour for working 40 hours a week, and they've worked 30 of those hours and been paid $600, and the employer just says, you know what? I feel like I've given you enough this week. I'm not paying you for those other 10 hours. They would have been paid $600 for that 40-hour work week, which would have exceeded minimum wage. There's no Fair Labor Standards Act violation in that hypothetical. The remedy is either contract or state wage payment law, and as a consequence of that and the unambiguous nature of the statute, Skidmore does not apply. Thank you. Thank you, counsel. We thank counsel for their excellent arguments today and their oral arguments today, which were great. We'll take the case under advisement.